N. I. BURNETT v. GREAT NORTHERN RAILWAY COMPANY.

June 9, 1899.

Nos. 11,571—(107).

| 76 | 461 |
|---|---|
| o78 | 278 |
| 78 | 279 |

| 76 | 461 |
|---|---|
| 81 | 241 |

**Diversion of Water—Verdict Sustained by Evidence.**

Evidence *held* to sustain the verdict in this case, to the effect that the defendant, by means of its ditches, negligently diverted the waters of a natural water course, and discharged them upon the land of the plaintiff, to his injury.

**Testimony of Witness.**

Witnesses whose competency has been shown may state the result of their actual knowledge and observation.

**Request to Charge Jury.**

Requests for instructions to the jury, which are an incomplete statement of the law and misleading, or which assume as true disputed facts, are erroneous. Certain requests in this case considered, and *held*, that the trial court rightly refused them.

**Growing Crop—Measure of Damages.**

The measure of damages for the loss of growing crops is their value at the time the loss occurred, to be determined by facts then existing. *Held*, that the damages awarded in this case are not excessive.

Action in the district court for Clay county to recover $1,000 damages for injury to plaintiff's crops resulting from overflowing his land. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $502.50. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*C. Wellington,* for appellant.

*C. A. Nye,* for respondent.

START, C. J.[1]

This is an action for damages to the plaintiff's land and crops during the years 1892, 1896, and 1897, which he claims were caused by the negligent act of the defendant in diverting, by means of ditches, the waters from a natural water course, and discharging them upon his land. Verdict for the plaintiff for $502.50, and the

[1] BUCK, J., took no part.

defendant appealed from an order denying its motion for a new trial.

The defendant's railroad bed, between Barnesville and Moorhead, runs in a northwesterly course, and, at a point near the northwest corner of the northeast ¼ of section 16, township 137 north, range 46 west, it crosses a natural water course. Lying to the northeast of this point is a swamp, containing three to four sections of land. A portion of the water from this swamp flows to the southwest, through the water course, and at the point named the defendant has constructed a bridge over the course, which is designated in the record as "Bridge No. 3." Below the roadbed at this point, parallel thereto, and 80 feet from the center thereof, there is a highway, with a bridge over the water course. The area of discharge of this highway bridge is practically one-half of that of the railway bridge. The land of the plaintiff, which was injured by water, lies three or more miles northwest of bridge No. 3, on each side of the roadbed, being the southwest ¼ of section 1, township 137, range 47, and the southwest ¼ of section 36, township 138, range 47.

The plaintiff's claim on the trial was that the defendant, by means of ditches constructed on each side of its roadbed, diverted the water, which otherwise would have flowed through the water course, and carried it along the ditches, and discharged it upon his land. The defendant admitted the construction of the ditches, or "borrow pits," as it designated them, and denied that it connected them with the channel of the water course, but, on the contrary, claimed that it constructed across the ditches dams higher than the land, so as to prevent water from flowing into the ditches from the water course. It further claimed that any injury to the land of the plaintiff by water was caused by unusual and extraordinary rains and freshets, and by the insufficiency of the highway bridge to carry off the water flowing down the water course or coulee. The claims of the respective parties were submitted by the court to the jury.

1. The defendant's first contention on this appeal is that the verdict is not sustained by the evidence. The verdict necessarily includes a finding to the effect that the flooding of plaintiff's land was caused substantially as claimed by him, and not by any of the

causes claimed by the defendant. It is quite obvious from the record that the verdict is fairly supported by the evidence upon all points of difference between the parties, unless it be the claim that the injuries in question were caused by unusual and extraordinary rains and freshets, which the defendant was not bound to anticipate and guard against. As to this matter the evidence is less satisfactory, but not conclusive, in favor of the defendant. We hold that the verdict is sustained by the evidence.

2. The defendant's assignments of error 2 to 7, inclusive, challenge the correctness of the rulings of the trial court in the admission of the testimony of the plaintiff and one of his witnesses as to whether water flowed upon the plaintiff's land, except through the defendant's ditches. The witnesses were shown to have lived in the vicinity of the locus in quo before the ditches were constructed, and to be familiar with the natural surface of the land and flow of the water. The testimony given by them, in response to questions objected to by the defendant, was to the effect that they knew, from the natural lay of the land, that the water in question could not have found its way to the plaintiff's land if the ditches had not existed, because its natural course was to the south, and that before the ditches were dug the water did not flow onto the plaintiff's land, as it did afterwards. The defendant claims that this was opinion evidence, and incompetent, for the reason that the question was not one for expert evidence. The evidence was the result of the actual knowledge and observation of the witnesses, and it was not reversible error to receive it.

3. The defendant requested the court to charge that

"If the jury find from the evidence that this, or any part of it, was surface water, not coming through any well-defined channel, that collected in the ditches or borrow pits of the company, then for damages caused by such water the company cannot be held liable;" and, further, that,

"In no event can the jury find a verdict against the defendant, unless they find that it negligently constructed its borrow pits in such manner as to tap or connect with the waters of the coulee while the same was in a condition to be ordinarily expected by the company, in the exercise of usual and ordinary prudence in that regard, and that for water that escaped from that coulee over its

regular banks, and ran off on the prairie, and found its way into the borrow pits of the company, the company is not liable."

Each of the requests was refused by the court, and its rulings are assigned as error. Conceding that, as to the first request, there was evidence in the case tending to show that a portion of the water which was discharged upon the plaintiff's land was surface water, the request was an incomplete statement of the law, and liable to mislead, in that it omitted the element of the necessity or reasonableness of the act of the defendant in collecting surface water in ditches, and so discharging it as to injure the plaintiff. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462. The second request assumes as a fact that water did escape from the coulee over its regular banks, and ran off on the prairie, and thence into the borrow pits. There was no evidence in the case to justify the assumption. The most that could be claimed from the evidence in this particular was that the question was one for the jury. The court, however, did instruct the jury that the defendant was only required to construct its road in a reasonable way, and with ordinary prudence, and that it was not required to construct it so as to guard against extraordinary floods. Both requests were rightly refused.

The court also instructed the jury as follows:

"But if the cutting down of any barrier along that road, in such manner as to permit the water to flow in a direction in which it otherwise would not, if that was done by the company, then they would be responsible for that act. * * * I will not attempt to review the testimony, but leave you to consider it all, directing your attention to that one question, whether, under all the testimony in this case, you are satisfied that the digging of these ditches did change the course of that water, so as to carry it in another direction for a certain distance, and then turn it so as to injure this plaintiff's land. If that is the case, then the plaintiff would be entitled to recover."

It is clear, from the whole charge, that the water to which the court referred was the water which naturally flowed down and along the water course. The defendant excepted to the giving of the first proposition stated in the part of the charge we have quoted, and assigns the giving of it as error, for the reason that it omits the element of ordinary care or prudence on the part of the de-

fendant in diverting the flow of the water. The charge, taken as a whole, was correct; for, if the defendant did the acts hypothetically stated in the charge, it was prima facie negligent, and liable for the consequences thereof.

4. The last claim urged is that the damages are excessive. If the damages to the plaintiff's crops are to be estimated with reference to events occurring subsequent to the loss, such as the average yield of similar crops, and the market value of the grain, the evidence indicates that they are excessive. But the measure of the plaintiff's damages for the loss of his growing crops was the value on the day they were destroyed, to be determined by facts existing at the time. Byrne v. Minneapolis & St. L. Ry. Co., 38 Minn. 212, 36 N. W. 339; Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449, 63 N. W. 1104. The evidence sustains the award of damages when tested by this rule.

Order affirmed.