ROBERT POYNTER v. COUNTY OF OTTER TAIL.[1]

January 4, 1947.

No. 34,239.

---

[1]Reported in 25 N. W. (2d) 708.

*Field & Field,* for appellant.

*Dell & Rosengren,* for respondent.

CHRISTIANSON, JUSTICE.

Appeal from a judgment after defendant's alternative motion for judgment or new trial was denied.

This matter arises out of an action for damages allegedly suffered by plaintiff, a farmer in Otter Tail county, which damages it is alleged were caused by defendant's negligent construction of inadequate culverts in a highway over the Otter Tail River in such county, it being alleged that such culverts caused the river to overflow its banks and flood the land farmed by plaintiff, to his damage in the sum of $3,617.42. Trial was by jury, and a verdict for $995.60 was returned in favor of plaintiff.

Defendant's assignments of error raise several important questions, which may be summarized as follows:

(1) Is the release of damages contained in the highway easement here involved a bar to the bringing of an action for damages?

(2) Can an action be maintained against Otter Tail county where the construction complained of was done under the provisions of the federal highway act requiring construction to be undertaken by the state highway department?

(3) Does anyone in building a highway over a natural watercourse become an insurer against damage from floods caused by the obstruction of such natural watercourse by such highway, regardless of negligence and regardless of the unprecedented and excessive character of the flow of water?

(4) Were the court's rulings erroneous with respect to the question of damages?

(5) Was it error to permit plaintiff to call the county engineer for cross-examination under the statute?

124

■ We will first consider the release of damages involved in the easement. It is the contention of defendant that the release constitutes a complete bar to the action here brought. The easement given by the then owner of the farm in question reads in part as follows:

"And the said Grantor does hereby release the County of Otter Tail, State of Minnesota, its successors and assigns, from all claims for any and all damages resulting to the lands through and across which the parcel of land hereby conveyed is located by reason of the location, grading, construction, maintenance, and use of a public highway over and upon and the removal of materials from the premises hereby conveyed and from the uses incident thereto * * *."

We do not consider such release a bar to the maintenance of an action by plaintiff for the negligent construction or maintenance of the highway in question. It is to be noted that in the instant case the release was given before the construction of the highway and the installation of the culverts complained of. In Jungblum v. Minneapolis, New Ulm & S. W. R. Co. 70 Minn. 153, 158, 72 N. W. 971, 972, where a release very similar in terms was there the subject of controversy, this court said:

"If this deed is to be construed as exempting the defendant from liability for a negligent construction of the road, it also exempts it from liability for killing the plaintiff's stock or burning his buildings by the negligent operation of the road. It was not within the contemplation of the parties to this deed that the defendant would negligently construct and operate its road. This deed is to be construed as releasing the defendant only from all damages resulting from a reasonable and nonnegligent construction and operation of the railway over and upon the premises conveyed. Fremont v. Harlin, 50 Neb. 698, 70 N. W. 265 [36 L. R. A. 417, 61 A. S. R. 578]. The cases relied upon by the defendant, McCarty v. St. Paul, 31 Minn. 278, 17 N. W. 616, and Radke v. Minneapolis, 41 Minn. 350, 43 N. W. 6, are not in point, for the roadbed in each case was constructed before the deed was executed, and the grantor was held to have con-

sented by his deed to the continued maintenance of the road as actually constructed."

This court, in Evans v. N. P. Ry. Co. 117 Minn. 4, 8, 134 N. W. 294, 296, refers to the holding and theory of the Jungblum case as fol-lows:

"The case of Jungblum v. Minneapolis, N. U. & S. W. Ry. Co. 70 Minn. 153, 72 N. W. 971, for reasons stated in that opinion, is clearly distinguishable. In that case the railroad embankment had not been constructed when the deed was given. In the case at bar it had. And the situation was open and within the contemplation of the con-tracting parties in entering into the settlement."

Since the release here under consideration did not contemplate a release of damages caused by the negligence of defendant in the con-struction and maintenance of the highway and the instant action was brought on the basis of the alleged negligence of defendant, we must and do hold that the release does not constitute a bar to the maintenance of the action. Since the release by its terms does not constitute a bar to the maintenance of the action, we need not con-sider other objections urged against the applicability here of the release.

■ The second question is whether this action can be maintained against Otter Tail county, the road in question having been built under the provisions of the federal highway act, which require that the construction be undertaken by the state highway department. From the record it is obvious that the state highway department was acting only as the agent of the county in the construction of the highway in question. This appears from the contract entered into between the county and the state commissioner of highways in this connection. Therein, it was agreed to recommend for approval the construction of the highway here in question with funds appropri-ated pursuant to the federal highway act, the county agreeing, if the project should be approved and built, to thereafter maintain the same at its expense. Another contract was also entered into which further established the relationship between the county and the

commissioner of highways. In such contract, the commissioner was requested to cause the construction of the proposed project, and the contract further recited that, at the request of the county, proposals had been called for the advertising of the work which "said County desires to accomplish." The contract then further stated in part as follows:

"The Commissioner of Highways, for the purposes herein expressed, shall be considered the agent for the County. This agreement is made for the sole benefit of said County."

The contract also provided that the commissioner of highways should use the moneys deposited with him for the payment of the work; that no state money should be used for the project, and the credit of the state would not be pledged therefor; that if additional funds were needed the county would deposit the same, and the county would furnish at its own cost the required right of way and all engineering supervision required by the commissioner of highways; and that any additional engineering supervision not furnished by the county would be included as a cost of the project. Thereafter and pursuant to the contract, the county engineer's office made all surveys, prepared all preliminary plans and specifications, and provided all supervision of the construction. The plans were actually approved by the commissioner of highways, but no change was made in them except with reference to the culverts in question. Immunity from suit is claimed by defendant on the ground that the state of Minnesota was in fact the builder of the highway and that the county acted purely in its governmental capacity with reference to the construction. Defendant attempts to deny the agency relationship obviously established, despite the fact that it accepted the road on May 10, 1943, and has since maintained it. Under circumstances such as are here presented, a county is liable for negligence in the construction and maintenance of its highways. Westerson v. State, 207 Minn. 412, 416, 291 N. W. 900, 902; Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123; Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N. W. 222. De-

fendant further contends that, inasmuch as the state of Minnesota, the agent, cannot be sued, the principal, the county of Otter Tail, cannot be sued. This argument, however, is without merit. As stated in Restatement, Agency, § 217:

"(2) A master or other principal is not liable for acts of a servant or other agent which the agent is privileged to do although the principal himself would not be so privileged; but he may be liable for an act as to which the agent has a personal immunity from suit."

See, also, Miller v. J. A. Tyrholm & Co. Inc. 196 Minn. 438, 265 N. W. 324.

■ We now come to the question of the liability of defendant for the damages resulting from the overflow, allegedly caused by the negligence of defendant in the construction and maintenance of the culverts. It is necessary to a better understanding of the contentions and arguments of the parties that pertinent facts relative to the watercourse and highway in question be detailed somewhat.

The Otter Tail River, a natural watercourse, in flowing through Otter Tail county from the north, describes a wide arc or irregular circle in an easterly direction and, after having made such arc or circle, flows in a westerly direction within the county. In making such circle, the river runs through the township in which is located the farm operated by plaintiff. Over 25 years ago, in connection with a power project, the Otter Tail Power Company, an electric utility, caused a diversion dam to be constructed across the channel of the Otter Tail River after it enters the county from the north and before the arc or circle to the eastward begins. This dam caused a considerable quantity of the waters of the river to be diverted from their natural channel through channels and tunnels in a southwesterly direction, and thence through the power plant owned and operated by the power company, after which the waters were returned to the river channel after it had made its circle through the township in which plaintiff's farm is located. The diversion project actually cut off several miles of the river which previously flowed

around the large bend referred to and concentrated the fall of the water thus diverted for power purposes. As a result of the diversion of the river waters for power purposes, there was usually only a small stream of water running down the old river bed around the circle or bend adjacent to the farm involved in this action. The road subsequently constructed by defendant crosses the old river channel on the east side of the farm operated by plaintiff. No road of any character had existed at that location before construction of the highway here involved. The new road became a part of what is known as the Otter Tail Lake road running from Fergus Falls to Otter Tail Lake. There was evidence to the effect that the engineers, in planning the construction of the highway, took into consideration the facts and circumstances then existing and as they had existed for more than 25 years. The plans as made called for the installation of two corrugated metal culverts, each 90 feet long and five feet in diameter. There was testimony to the effect that these structures so designed were more than ample to carry all the water that had come down the old river channel for more than a quarter of a century, or any amount of water that could be reasonably anticipated to result from natural causes at any time in the future. Evidence was introduced to the effect that one of these five-foot culverts would have been sufficient to carry the water coming down the old river channel at any time during the past 25 or more years. The plans as made were approved by the state highway department and by the Federal Bureau of Public Works. The highway department did require that the sheet of plans with reference to the culverts be redrafted in order to show the specifications for the culverts with more particularity. No change was made in the size of the culverts.

This action involves damages for the years 1942 and 1943. There is no dispute as to flooding in 1943. There is some dispute as to flooding in 1942 and 1944. Testimony was introduced in behalf of defendant to the effect that in 1943 there was an unprecedented amount of water coming down the Otter Tail River and that the water came in such quantities that the diversion project for the first time in more than 25 years was unable to handle the flow, with the

result that large quantities of water came over the top of the diversion dam of the power company and rushed down the old river channel. As a consequence, the small stream of water that had existed for more than 25 years grew to flood proportions. There was testimony that more water came down the old river channel in 1943 than those testifying had seen either before or after the diversion project. It was asserted that the two five-foot culverts were inadequate to handle the unprecedented amount of flow, with resultant backing up and flooding of the Poynter farm. The court in its charge to the jury stated in part as follows:

"* * * I charge you that if the defendant, Otter Tail County, constructed the embankment and culverts so as to interfere with the natural flow of the water and by reason of it the waters backed up on the land occupied by the plaintiff and did it damage, the defendant county would be liable irrespective of negligence. In other words, the obstruction of the flow of the water of this natural watercourse would be an invasion of plaintiff's rights."

Defendant took exception to this charge and, we believe, properly so, in view of the evidence that had been introduced with respect to the unprecedented flow of water in the channel in question.

It may be generally stated that the liability of one constructing or maintaining a structure in or across a natural watercourse is based on the rule that he must make proper and adequate provision for the passage therein of such waters as can be reasonably anticipated as shown by past history and all facts and circumstances bearing upon that question. As stated in 2 Farnham, Waters and Water Rights, § 568:

"* * * The degree of care and foresight one constructing embankments and culverts over natural streams must use in order to avoid liability for injury to adjacent property from flooding is that which a discreet and cautious man would or ought to use if the risk and loss were to be exclusively his own, and must be in proportion to the nature and magnitude of the injury likely to follow from the occurrence to be anticipated and guarded against. If he exercises

such care, liability for the injury does not necessarily follow from the fact that water is held back by the bridge."

In §§ 576 and 577, the author deals with unprecedented stages of water and extraordinary floods. Section 577 is as follows:

"**No liability in case of extraordinary flood.** The one about to erect a structure over a water course is entitled to act upon the assumption that natural conditions will continue as they have existed *within a reasonable time prior to that at which he proceeds with his undertaking.* He is not bound to anticipate convulsions of nature, nor floods which have not previously been known to occur. Therefore, where his structure becomes injurious to his neighbor because of an unprecedented flood, he must be shown to have been guilty of negligence in the manner of constructing it, in order to be held liable for the injury." (Italics supplied.)

In harmony with the rule above stated are the Minnesota cases of Dorman v. Ames, 12 Minn. 347 (451); Ames v. Cannon River Mfg. Co. 27 Minn. 245, 6 N. W. 787; and Van Wilgen v. Albert Lea Farms Co. 176 Minn. 339, 344, 223 N. W. 301, 303, in the last of which this court stated:

"* * * In other words, if defendant provided a proper outlet for the water from such rainfalls as it reasonably ought to have anticipated, it is not liable; but if it failed to provide a proper outlet for the water from such rainfalls as it ought to have expected, it is liable and is not relieved from liability by the fact that the rainfall in question happened to be of an unprecedented character, for in that case its negligence added to the overflow. 27 R. C. L. 1106; Ann. Cas. 1918A, anno. 1114. *While the cases cited involved natural watercourses,* we see no reason why the same principle should not be applied where the natural outlet for surface water is needlessly obstructed." (Italics supplied.)

In the light of the decisions and authorities generally, it is clear that such part of the court's charge as is hereinbefore set forth is such an erroneous statement of the applicable law in the instant case that defendant is entitled to a new trial.

From the record it appears that the trial court relied upon and closely followed the charge given in Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968. The instruction there, while correct in that case, would not be applicable here. In the Skinner case there appears to have been no question as to an unprecedented flow of water. It appeared that an obstruction had been erected over a natural watercourse so as to cause the *natural flow* of water therein to back up and overflow adjacent lands. In that situation, the charge there made was correct. In the instant case, however, there was evidence on behalf of defendant that at the time in question there was an unprecedented flow of water coming down the channel of the natural watercourse here involved.

Since defendant, on the basis of the erroneous charge above referred to, is entitled to a new trial, it is not necessary to consider other assignments of error for the purpose of considering whether they provide grounds for a new trial. Inasmuch as there is going to be a new trial, however, it is desirable that we here determine the questions presented by such assignments of error in order that the errors there complained of may not be there repeated.

■ We will therefore next consider the rulings of the trial court with respect to evidence bearing on the question of damages. The first objection raised with respect to damages is in the court's charge relative to the question of loss of profits in the production of cream. It appears that the court's charge relative thereto was clearly unwarranted. The only evidence introduced as a basis upon which the jury might determine that there had been a loss of profits, and the amount thereof, consisted of statements from the creamery showing the butterfat and payments made from May to August for the years 1942 and 1943. Over objection, these statements were admitted. No figures for purposes of comparison with prior or subsequent years were introduced. There was no evidence as to the production of each cow in the herd, the normal production to be anticipated, the respective dates when each cow would become fresh, the former and subsequent production of each cow on ordinary pasture and feed conditions, the size of prior herds and changes, or any evidence

which would prove that the yield of cream during 1942 and 1943 was less than in prior years. Despite this lack of competent evidence on which to base proof of loss of profits from cream production, the trial court charged the jury with respect to such element of damages as follows:

"Another element of special damages which plaintiff claims is that by reason of having lost the pasture—his pasture, or a part of his pasture, by reason of the backing up of this water his cows did not produce the amount of cream or butterfat that they would have otherwise produced if they had had access to that pasture. In that connection I don't know what evidence you will have to consider except what is shown by the exhibits with reference to the amount he received at the creamery during this period; and you consider the time when his cows came fresh, and other elements which tend to increase or decrease milk production. And if you find that the plaintiff has suffered damages on account of a reduction in butterfat, you in your good judgment assess such damages to the plaintiff in that respect as you find are supported by the greater weight of the evidence in the case."

Such an instruction was a strong suggestion to the jury to consider an element of damages which, because of lack of competent evidentiary foundation, was not properly before the jury for its consideration. We consider this reversible error, and a repetition thereof should be avoided on the new trial.

The second objection raised with respect to the court's ruling relative to damages is in connection with testimony as to the value of crops allegedly damaged as the result of the flooding of plaintiff's fields. The proper rule in such a situation and one well established in this state is that the evidence, in order to be competent, must be directed to the value of the crops as they were standing at the time and place of their destruction and damage. Larson v. Lammers, 81 Minn. 239, 83 N. W. 981; Lynch v. Minnesota Power & Light Co. 174 Minn. 443, 219 N. W. 459; Burnett v. G. N. Ry. Co. 76 Minn. 461, 79 N. W. 523. In the instant case, it developed on cross-exam-

ination that the basis of valuation used in the evidence introduced on behalf of plaintiff was the value of the crops allegedly damaged based upon the assumption that they would mature and be harvested. A motion that such evidence be stricken was denied. Such refusal was error. Clearly, valuation of crops of oats, barley, and corn based upon the assumption that they will mature and be harvested may differ considerably from the valuation of such crops as they stand in the fields in the early part of the growing season, the time when the crops here involved were allegedly damaged.

■ Finally, we must consider and determine the question whether the court erred in permitting, over defendant's objection, the cross-examination under the statute of a county officer, in this case the county engineer. It is asserted that the statute authorizing cross-examination of the adverse party or its officers or agents does not apply to officers of municipal corporations, and it is further urged that even if the statute applied to municipal corporations the municipal officer here called was not a managing agent of defendant at the time of the happening of the events in question. A determination of the applicability of the statute will make unnecessary a further discussion of the objection that the officer called was not a managing agent of defendant at the times in question.

In taking up consideration of this question, we find that on two previous occasions this court has had this question raised on appeal, but in neither case was the question determined, the court finding in each instance that the calling of the municipal officers there involved had not resulted in prejudicial error. Leystrom v. City of Ada, 110 Minn. 340, 125 N. W. 507; Davies v. Village of Madelia, 205 Minn. 526, 287 N. W. 1. The provision of § 595.03, pertinent to the decision of this question, reads as follows:

"A party to the record of any civil action or proceeding, or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent, or managing agents of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, * * *."

134

Does the term "corporation" as used in the statute contemplate and include municipal corporations such as defendant? We think not. It has been generally held that the word "corporation" when used in the statutes does not include a municipal corporation. Sherman County v. Simons, 109 U. S. 735, 740, 3 S. Ct. 502, 506, 27 L. ed. 1093, 1094; Switzer v. City of Wellington, 40 Kan. 250, 19 P. 620, 10 A. S. R. 196; Brown v. Gates, 15 W. Va. 131; City of Memphis v. Laski, 56 Tenn. (9 Heisk.) 511, 24 Am. R. 327; Iowa Eclectic M. C. Assn. v. Schrader, 87 Iowa 659, 55 N. W. 24, 20 L. R. A. 355; State v. Dist. of Narragansett, 16 R. I. 424, 16 A. 901, 3 L. R. A. 295; Owners of Lands v. People ex rel. Stookey, 113 Ill. 296, 314; McDougal v. Board of Supervisors, 4 Minn. 130 (184). See, also, 9 Wd. & Phr. (Perm. ed.) 681:

"Ordinarily the term 'corporation,' as used in a statute, means private corporation. Feemster v. City of Tupelo, 83 So. 804, 806, 121 Miss. 733; City of Tyler v. Texas Employers' Ins. Ass'n, Tex., 288 S. W. 409, 410."

A case bearing upon the question before us is Linehan v. City of Cambridge, 109 Mass. 212. The statute there involved contained a provision relative to the interrogation of the adverse party that where the party was a corporation "the opposite party may examine the president, treasurer, clerk or any director or other officer" of the corporation in the same manner as if he were a party to the suit. The suit in that instance was against the city of Cambridge, and the city clerk and city engineer refused to answer interrogatories propounded to them as officers of the city. Their refusal was based upon the ground that towns and cities were not included in the term "corporation" as used in the statute. The supreme court of Massachusetts sustained the position of the officers of the city in their refusal and said in the course of its opinion (109 Mass. 212):

"It is true that all cities and towns must possess for the discharge of municipal duties certain limited corporate powers, coextensive with the duties imposed. But the main purpose of their organization is political, and that organization always embraces the in-

habitants who for the time may be within the territorial limits into which the legislature, according to its own views of public convenience, may have divided the Commonwealth. The inhabitants do not, like the members of a private corporation, derive private or personal rights under the act of incorporation, the sole office and object of which is to regulate the manner of performing public and political duties. While exercising corporate powers to the extent indicated, they yet differ distinctively and widely from private and moneyed corporations, both in organization, government and mode of action. Rumford School District v. Wood, 13 Mass. 192. In common parlance, towns, cities and other municipal organizations are not known as corporations; they are spoken of not uncommonly by text writers in the law as *quasi* corporations. The statutes of the Commonwealth which relate to them, with their numerous provisions, are collected and classified by themselves, and they are not usually denominated corporations; while the chapter entitled 'Of the powers, duties and liabilities of corporation,' (Gen. Sts. *c.* 68,) contains no reference to towns and cities, but is devoted to the regulation of private and moneyed corporations. It is to be presumed that the legislature, in view of the considerations above suggested, relating to the substantial differences between these two kinds of corporations, the popular use of the word 'corporation' and its ordinary use in the statutes of this Commonwealth, would have employed other or additional words if it was intended by the section in question to include the former in its provisions. It is to be noticed also that the officers who are specifically named in its provisions, namely, president, treasurer, clerk and director, are the usual officers of private corporations, while some of them at least are not the proper officers of cities and towns."

We believe that the reasoning of the Linehan case is applicable to the case at bar.

Another case in accord with the Linehan case is Davidson v. City of New York, 175 App. Div. 969, 161 N. Y. S. 1006 (affirmed, 221 N. Y. 487, 116 N. E. 1042). That case held that the statutory provisions with reference to the examination before trial did not apply

where the corporation involved was a municipal corporation, basing its holding upon the New York case of Uvalde Asphalt Paving Co. v. City of New York, 149 App. Div. 491, 134 N. Y. S. 50. It is our opinion that the provisions of § 595.03 do not apply to officers of municipal corporations and therefore that the court erred in permitting the cross-examination of the county engineer over the objection of defendant.

Reversed and a new trial granted.

PETERSON, JUSTICE (dissenting in part).

I dissent from the proposition that defendant cannot be held liable unless it was guilty of negligence. The damage here was caused by defendant's acts in interfering with the flow of water in the river by the construction of the road and culverts. While the culverts were adequate to carry off the flow of water ordinarily to be anticipated, they were not in fact adequate to carry off the particular water in question. The fact that the amount of water in question was "unanticipated" does not excuse defendant from liability. Plaintiff's damage was caused nonetheless by the road and the culverts. Liability follows under the plain language of Minn. Const. art. 1, § 13, which provides:

"Private property shall not be taken, destroyed or *damaged* for public use, without just compensation therefor first paid or secured." (Italics supplied.)

The constitution puts liability for *damaging* private property upon the same basis as that for *taking* it. No one would contend that there would be no liability here for an actual taking. Liability under the constitution for a *taking* is plain. Liability under the constitution for a *damaging* is equally plain.

Compensable damaging occurs where there is a physical interference with private property regardless of whether such interference is accompanied by negligence, nuisance, or other actionable wrong. We have held public corporations liable for *damaging* private property within the meaning of the constitution where a public improvement caused physical disturbance of private property to

the owner's detriment, even though there was no proof of any independent actionable wrong such as trespass, negligence, or nuisance. In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47; Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N. W. 222; Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 120 A. S. R. 635, 13 L.R.A.(N.S.) 790; Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L.R.A.(N.S.) 741; Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119. We have gone further; we have held that liability under the constitution for *damaging* private property exists regardless of whether the damage was inflicted by an independent tort.

In Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968, we expressly held in a case like the instant one that the liability is "irrespective of negligence."

In Dickerman v. City of Duluth, 88 Minn. 293, 92 N. W. 1120, *supra,* we said:

"* * * the proper construction [of the constitution] is that a recovery may be had where private property has sustained a substantial damage by the making and using of an improvement * * * *and that it does not require that the damage shall be caused by trespass or actual invasion of the owner's real estate.*" (Italics supplied.)

Our rule that a public corporation is liable under the constitution for *damaging* private property by causing physical disturbance of it to the owner's detriment regardless of whether there was any independent wrong such as trespass, negligence, or nuisance is in accord with the authorities elsewhere, which are summed up in 29 C. J. S., Eminent Domain, § 111, p. 921, as follows:

"*Under constitutional or statutory requirement of compensation for property damaged or injured.* [Italics in text.] If the constitutional or statutory provisions provide for compensation where property has been 'damaged,' 'injured,' or 'destroyed' by the exercise of eminent domain, consequential damages are recoverable, *and such recovery does not depend on any question of negligence* or any question of nuisance. * * * [Italics supplied.]

"* * * A compensable damaging or destruction, under these provisions, includes injury necessarily resulting from construction of works for public use and from subsequent maintenance and operation thereof, * * *."

The text is amply sustained by the numerous authorities cited in the footnotes.

I think that the rule of Skinner v. G. N. Ry. Co. *supra,* that there is liability under the constitution for a damaging of private property "irrespective of negligence" is the correct one and should not be qualified as is done here. As pointed out in In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47, *supra,* the rules applicable to private landowners are not applicable where, as here, the damage is done by a public authority whose liability is fixed by the constitution.

MAGNEY, JUSTICE (dissenting).

In my opinion, the rule laid down in Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968, applies to the facts in this case.

Permitting the county engineer to be called for cross-examination under the statute was error, but an examination of the testimony which he gave discloses no prejudice to defendant.

The court erred also in its charge relative to the question of loss of profits in the production of cream. There was no evidence on which the jury could award any damage for such claimed loss. However, my impression is that no prejudicial reversible error resulted.

MATSON, JUSTICE (dissenting).

In my opinion, the rule in Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968, to the effect that a defendant, *irrespective of negligence,* is liable for any damages resulting from its interference with the flow of water through a natural watercourse, is here controlling.