**Norbert J. TERFEHR, et al., and Joyce M. Klimek, et al., Respondents,**

v.

**Roman KLEINFEHN, Appellant.**

**No. C3-84-3.**

Court of Appeals of Minnesota.

July 17, 1984.

Review Denied Sept. 12, 1984.

Ronald R. Frauenshuh, Sr., Paynesville, for respondents.

Scott T. Johnston, Alexandria, for appellant.

Considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

The parties are neighbors with a history of disputes over their farm properties. Respondent Terfehr and others claimed appellant Kleinfehn had deliberately blocked a common ditch used by the parties, causing damage to Terfehr's crop land. Kleinfehn contended Terfehr and others had failed to comply with previous court orders directing the common ditch be unobstructed, thereby causing him loss of crop land.

The trial court found Terfehr in compliance with and Kleinfehn in violation of its previous court orders, and awarded Terfehr damages. Kleinfehn appeals. We affirm.

## FACTS

Respondents Norbert and Margaret Terfehr own land adjoining appellant Roman Kleinfehn's land. Prior to 1975, a natural drainage ditch carried water from Terfehr's property onto Kleinfehn's property and then back onto Terfehr's property. Kleinfehn placed a culvert at the point the water enters his land and the Terfehrs placed a culvert at the point the water re-enters their property. In 1975, Terfehrs commenced suit against Kleinfehn seeking removal of the Kleinfehn culvert and Kleinfehn counterclaimed requesting the Terfehr culvert be removed. The trial court ordered removal of both culverts to allow the natural flow of water.

In 1979, Kleinfehn complained the Terfehrs had not complied with the 1976 order. Pursuant to a stipulation then entered into by the parties, a committee of three was chosen to visit the scene, take testimony and make investigative efforts to determine what was required to "insure the flow of water through the natural water course as it would have been had the April 22, 1976 judgment been actually complied with and adhered to by both parties." It was further stipulated that the committee's recommendation would be binding on the court and the parties.

By order dated May 30, 1980, the trial court adopted the committee's recommendations and ordered "That the ditch ... be cleared on the land of both the plaintiffs [Terfehrs] and defendant [Kleinfehn] as far and as deep as need be to assure the free flow of water through the ditch in order not to flood adjacent land at any place." The trial court then ordered a survey to be made determining the amount and location of the material to be removed from the ditch to carry out the above order. Judgment was entered on June 6, 1980. No appeal was filed.

Kleinfehn failed to comply with the court's order. The trial court then ordered Kleinfehn to clean the ditch on his land by December 13, 1980, and authorized him to place in the ditch a 24-inch culvert. In the spring of 1981, the committee reviewed the ditch and the placement of the new culverts. A majority of the committee approved the ditch as constructed and approved the placement of the culverts on both Terfehrs' and Kleinfehn's property. The report filed by the committee states:

The Committee returned to the ditch site on April 21, 1981. It was raining and water was flowing freely in the ditch and in the culvert. The Committee observed that the defendant's [Kleinfehn's] ditch can be lowered an additional 2 to 2½ feet to correspond to the depth of plaintiff's [respondent's] ditch. The Committee further observed that plaintiff's [Terfehrs'] ditch is sufficiently deep

to assure the free flow of water in the ditch and the culvert.

There is a man-made water hole on defendant's [Kleinfehn's] property. It has been constructed in such a manner that it will collect water but will not drain unless it overflows. It is a man-made construction, and is not designed to be drained or to be part of the "water course."

No appeal was taken from this report.

Later, Kleinfehn requested the Terfehrs to lower their culvert to allow additional drainage for his property. They refused. On September 25, 1981, Kleinfehn brought a motion requesting that the Terfehrs' be required to lower their culvert so he could farm all of his land. The trial court suggested the attorneys visit the site to determine what should be done in order to settle the matter. The attorneys observed that Kleinfehn had dug out a portion of the ditch on his side of Terfehrs' culvert. The attorneys then agreed that a survey be taken to determine whether removal of a third culvert located entirely on Kleinfehn's land and a cattle crossing would result in better drainage of Kleinfehn's property. Meanwhile, the Terfehrs' children purchased their parents property and refused to lower their culvert.

Kleinfehn deliberately placed a steel plate in the common ditch as a matter of leverage to not only force Terfehrs' children to lower their culvert but, also to return the entire matter to the court. The Terfehrs' children responded by commencing an action against Kleinfehn seeking removal of the steel plate and damages for lost crops. Kleinfehn counterclaimed for lost crops due to flooding on his property allegedly caused by the Terfehr culvert.

The trial court concluded "the ditch had been constructed in conformity with the original [1980] Court judgment and also in conformity with the findings of a majority of the ditch viewers in this matter," that Terfehrs had completely complied with the 1980 judgment and with the ditch viewer's recommendations, and that Kleinfehn had deliberately obstructed the ditch, causing damages to the Terfehrs for lost crops in the sum of $5,982.50.

## ISSUES

1. Whether the trial court erred in finding initial compliance of the parties with a prior court order and subsequent violation by appellant Kleinfehn?

2. Whether the trial court erred in awarding damages for lost crops to the Terfehrs?

3. Whether the trial court should have awarded punitive damages to the Terfehrs because of Kleinfehn's conduct?

## ANALYSIS

### I

The 1976 judgment required both parties to remove the culverts and cattle crossings on their properties. The 1980 judgment ordered the ditch be cleaned on the land of both parties as far and as deep as needed to assure the free flow of water through the ditch in order not to flood adjacent land. In the spring of 1981, a majority of a ditch committee, acceptable to the parties and appointed by the court, filed a report finding the Terfehrs' ditch sufficiently deep to assure the free flow of water in the ditch and culvert. This recommendation was binding on the court and the parties. The action of Kleinfehn in later installing a "steel plate" in the ditch was a violation of both the court's judgment and the special committee findings. An engineer testified that the steel plate acted as an obstruction and stopped the natural flow of water and that lowering the Terfehr culvert by 2 feet would leave an insufficient fall between the Terfehr culvert and the point at which the water drains off the Terfehr property. Although Kleinfehn admits the steel plate interferes with the natural flow of water, he claims Terfehr is maintaining an inadequate culvert on his property while requiring Kleinfehn to lower his culvert 2 feet deeper then the natural elevation of the ditch on his property.

The general rule with regard to the diversion of natural water courses has been stated as follows:

> The court charged the jury that if there was a natural watercourse at the point where the culvert was placed, and the defendant constructed the embankment and the culvert so as to interfere with the natural flow of the water, and by reason of it the waters backed up on the land of the plaintiffs and did it damage, the defendant was liable irrespective of negligence; in other words, the court charged the jury that the obstruction of the flow of the natural watercourse was an invasion of the plaintiffs' right. This is a correct statement of the law.

*Skinner v. Great Northern Railway Co.,* 129 Minn. 113, 115, 151 N.W. 968, 969 (1915). In addition,

> It may be generally stated that the liability of one constructing or maintaining a structure in or across a natural watercourse is based on the rule that he must make proper and adequate provision for the passage therein of such waters as can be reasonably anticipated as shown by past history and all facts and circumstances bearing upon that question.

*Poynter v. County of Otter Tail,* 223 Minn. 121, 129, 25 N.W.2d 708, 713 (1947).

As a result of the steel plate, Terfehrs' fields couldn't drain causing damage to several acres of crop land.

■ Kleinfehn claims the waters involved are surface waters, requiring application of the "reasonable use" rule, which under certain circumstances, allows a landowner who acts in good faith to drain his land of surface waters and cast them upon the land of another. *See Miles v. City of Oakdale,* 323 N.W.2d 51, 55 (Minn.1982); *Sheehan v. Flynn,* 59 Minn. 436, 61 N.W. 462 (1894). "Surface waters are waters from rain, springs, or melting snow that are not part of a natural watercourse." *Lahman v. Comm'r of Highways,* 282 N.W.2d 573, 575 (Minn.1979). Surface waters "lie stagnant and inactive." *Hartle v. Neighbauer,* 142 Minn. 438, 441, 172 N.W.

498, 499 (1919). The water flowing through the common ditch is not surface water. The ditch in this case is a well defined watercourse in which there is a continuous flow of water. The record supports the findings of deliberate violation of a prior court order.

## II

■ The trial court awarded $5,982.50 in damages. Kleinfehn claims the trial court made no findings of fact to support this award. Although the trial court failed to "find" any damages, it did award damages in its conclusions of law. This was not error.

> [W]here the record is reasonably clear and the facts not seriously disputed, the judgment of the trial court can be upheld in the absence of trial court findings made pursuant to Rule 52.01, Rules of Civil Procedure.... However, where the record is not clear and the facts are in dispute, findings of fact by the trial court, made pursuant to Rule 52.01, should be made.

*Roberson v. Roberson,* 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973) (citations omitted). *See also Kruse v. Planer,* 288 N.W.2d 12, 14 (Minn.1979).

The record is reasonably clear and the facts are not seriously disputed. Testimony at trial showed Kleinfehn deliberately placed a steel plate in the ditch, that the ditch on Terfehrs' land was full of water and that it would not have been possible to get a good yield of corn during the 1982 season. There was additional testimony by John Terfehr that his average yield for corn was approximately 90–100 bushels per acre in 1982 and 65 bushels per acre in 1983. The parties agreed to an average per bushel price of corn for 1982 and 1983. Under these circumstances, the failure to issue findings of fact regarding damages was not error.

## III

The Terfehrs claim it was error not to award punitive damages in this case. In

general, punitive damages are governed by Minn.Stat. § 549.20 (1982), which provides, in part:

> Subdivision 1. Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

> .    .    .    .    .

> Subd. 3. Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

*Id.* "To justify an award for punitive damages, the wrongful act must have been done with malicious motive. Such damages are intended as punishment for a willfully, wrongful act, done with malice." *Benson Coop. Creamery Assoc. v. First Dist. Assoc.*, 276 Minn. 520, 528–29, 151 N.W.2d 422, 427 (1967) (footnote omitted), *appeal after remand*, 284 Minn. 335, 170 N.W.2d 425 (1969).

■ Terfehrs argue that the failure to award punitive damages left them inadequately compensated. Punitive damages are not designed to compensate but rather to punish the offender for his reckless or oppressive conduct. *E.H. Boerth Co. v. LAD Properties*, 82 F.R.D. 635, 646 (D.Minn.1979).

■ The awarding of punitive damages is within the discretion of the trial court. The court found that Kleinfehn "knew or should have known that such action would, or at least could, cause damage" to Terfehrs' crops. This is the language of negligence. "Punitive damages are not recoverable where the wrongful conduct is merely negligent. . . ." *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980).

Lastly, the Terfehrs' claim that the failure to impose punitive damages leaves Kleinfehn free to continue obstructing the ditch. Granting punitive damages, however, would not remove the obstruction. Injunctive relief is a more appropriate remedy for removing the obstruction.

■ The trial court did not abuse its discretion in denying an award for punitive damages to the Terfehrs.

## DECISION

The record supports the trial court's finding of a violation by appellant Kleinfehn of a prior court order directing the ditch common to Kleinfehn and respondent Terfehr be left unobstructed. The record supported an award of compensatory damages but not of punitive damages to Terfehr.

We affirm.