48 Wis.2d 305 (1970)
179 N.W.2d 864
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Respondent.
No. 185.
Supreme Court of Wisconsin.
Argued September 11, 1970.
Decided October 9, 1970.
*310 For the appellant there was a brief by Gibbs, Roper & Fifield, and oral argument by John R. Hoaglund, Jr., all of Milwaukee.
For the respondent there was a brief by Wickham, Borgelt, Skogstad & Powell, attorneys, and Robert C. Watson of counsel, all of Milwaukee, and oral argument by Mr. Watson.
HEFFERNAN, J.
We conclude that the circuit judge erred in granting judgment to the defendant. For summary judgment to be granted to a defendant, the affidavits offered in support of the defendant's motion must contain facts which, if uncontested, are sufficient to show that the plaintiff's claim has no merit. It is therefore incumbent upon the trial court to address itself to the question of whether the evidentiary facts set forth in the movant's affidavits are sufficient to vitiate the plaintiff's cause of action.
In the instant case, the defendant's affidavit did not purport to meet the cause of action for negligence alleged in the complaint. It was addressed solely to the issue of whether the insurance company had contractually obligated itself to make inspections. The affidavit alleged, correctly as it would appear from the record, that it had not contracted to make inspections. Moreover, we must accept as the truth the statement that no separate service contract for the inspection of the boilers existed. The affidavit totally ignored the explicit allegation that its *311 agents had made an inspection of the boiler and had negligently failed to advise Menominee of the existing defect. No attempt was made to assert that its agents had made no inspection of the boiler or that inspections had been made with the exercise of reasonable care.
Even though the facts in the defendant's affidavit are correct and uncontested, the affidavit is based upon a legal theory which is insufficient to show that the plaintiff's cause is meritless. While the answer itself denied that an agent or inspector of the defendant had inspected the insured's equipment, the allegation of the answer is immaterial in the motion for summary judgment.
We have frequently stated that the motion papers in summary judgment must contain in themselves facts which entitle either party to judgment. We said in Artmar, Inc. v. United Fire & Casualty Co. (1967), 34 Wis. 2d 181, 188, 148 N. W. 2d 641, 151 N. W. 2d 289:
"When the motion is made by a defendant, it must be accompanied by an affidavit which sets forth sufficient evidentiary facts to show that the defense is sufficient to defeat the plaintiff. The moving party must make out a prima facie case in his motion and affidavits."
We have also pointed out in Leszczynski v. Surges (1966), 30 Wis. 2d 534, 539, 141 N. W. 2d 261:
"This showing of a defense must be by affidavit or other proof and a defendant cannot stand on a verified answer to perform that function. Pleadings are ineffectual as proof because facts stated in an affidavit take precedence over inconsistent allegations in a pleading."
In Laughnan v. Griffiths (1955), 271 Wis. 247, 73 N. W. 2d 587, we held that, for summary judgment, proof other than allegations of the pleadings is required.
*312 Thus, as we view the evidence presented by the defendant's affidavit, it was insufficient to support the contention that the plaintiff's cause of action was without merit. It simply failed to reach crucial elements of the plaintiff's cause of action. Only if we were to conclude that defendant's duty arose solely from contract would the defendant be even arguably in a posture to claim the right of summary judgment dismissing plaintiff's complaint.
A motion for summary judgment is not intended to substitute for a demurrer. It does not test whether or not the plaintiff has alleged facts sufficient to constitute a cause of action. It is used on the assumption, at least when invoked by the defendant, that even though a cause of action is stated the cause is factually unsupportable.
In Leszczynski v. Surges, supra, we reviewed the principles controlling the disposition of motions for summary judgment. We stated that:
"... we look first to the affidavits in support of the motion to see if a prima facie case has been made within the meaning of sec. 270.635, Stats., and if such a case has not been made we need go no further." (P. 539)
In the instant case the defendant has not factually controverted the elements of the alleged cause of action. The defendant predicated its motion for summary judgment on what we deem to be an error of law. It believed that a cause of action was spelled out only if the boiler insurance company had contractually obligated itself to make the inspection, and failed to take issue in its affidavit with the facts supporting plaintiff's cause of action for negligence. The defendant in its answer, however, denied facts which we deem essential to the plaintiff's cause of action. Although this denial is not relevant to our decision on summary judgment, we consider it appropriate to explore the theory of liability implicitly set *313 forth in the plaintiff's complaint, and we find it necessary to do so in discussing whether defendant's affidavit was germane to the factual contravention of the plaintiff's cause of action for negligence.
We are satisfied that the proper rule of law is that stated in Restatement, 2 Torts 2d, p. 142, sec. 324 A:
"Sec. 324 A. Liability to Third Person for Negligent Performance of Undertaking.
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
"(a) his failure to exercise reasonable care increases the risk of such harm, or
"(b) he has undertaken to perform a duty owed by the other to the third person, or
"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."
Under this view it is immaterial in a negligence action whether or not the defendant contractually obligated itself to inspect the boilers. It is enough that it undertook to inspect the boilers and that it did so negligently.
The accepted Wisconsin law is in accord with the section of the Restatement of Torts quoted above. In Wulf v. Rebbun (1964), 25 Wis. 2d 499, 131 N. W. 2d 303, this court made it clear that liability may be imposed on one who, having no duty to act, gratuitously undertakes to act and does so negligently. We stated therein:
"Although one may have no duty to perform an act, if he attempts to do something to another even although gratuitously he must exercise reasonable care. Firkus v. Rombalski, ante, p. 352, 130 N. W. (2d) 835; Prosser, Law of Torts (3d ed.), ch. 10, p. 339, sec. 54, Affirmative Conduct; 38 Am. Jur., Negligence, p. 659, sec. 17. The oft-quoted rule was aptly and simply stated by Judge CARDOZO in Glanzer v. Shepard (1922), 233 N. Y. 236, *314 239, 135 N. E. 275, 276, `... It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all....'" (PP. 503, 504)
It should be noted that neither the Wulf Case, supra, nor the Restatement section make "reliance" upon the gratuitously performed act a necessary element for recovery. In the Restatement view, the element of reliance on the act is merely an alternative basis for liability.
In addition, it should also be noted in passing, although we do not consider the counteraffidavits of the plaintiff important in view of our finding of the inadequacy of the defendant's affidavit, that Menominee Enterprises deposed that it relied on the inspection, and a fair reading of the affidavit of the representative of the industrial commission indicates its reliance also.
Moreover, we should point out the principle stated in Nelson v. Union Wire Rope Corp. (1964), 31 Ill. 2d 69, 199 N. E. 2d 769, discussing the question of reliance in connection with a negligently performed inspection, that the doctrine is applicable to nonfeasance rather than misfeasance. The court therein stated:
"Defendant's contention that the element of reliance is essential to its liability to plaintiffs is founded upon the premise that defendant was charged `only with nonfeasance, a failure to report a risk, or dangerous situation, already existing,' (39 Ill. App. 2d at 122,) [[1]] and upon the argument that whenever a duty arises from an undertaking, gratuitous or otherwise, the sine qua non for liability for nonfeasance, i.e., the omission to perform the undertaking, is reliance by the person to whom the undertaking was directed or by the person injured. This theory, however, either overlooks or misapprehends that defendant was charged with misfeasance, to-wit, that it gratuitously undertook to make safety inspections of the equipment and practices of its insured, and that it had *315 `carelessly and negligently performed the said inspections ...." (P. 85)
The same case holds that a gratuitous inspection by an insurer may be made under such circumstances as to create an enforceable duty to persons known or unknown.
In Nelson, the court found liability on an insurance company which had gratuitously undertaken the inspection of a particular construction job. As in this case, the insurer had the right to make the inspection but had no contractual obligation to do so. It concluded that under such circumstances a duty then devolved upon the insurer to make the inspections with due care and that its failure to do so was actionable negligence.
While some cases have placed stress upon the fact that the advertising of the insurance company in securing the policy emphasized the increased safety factor that would result from its inspections, we conclude that such "puffing" expressed at the time the policy is taken out is not probative of the question of misfeasance. Although advertising of this nature would constitute a clear holding out of the intention to perform inspections, it is enough under the Wisconsin rule cited above and the Restatement rule that there be an actual undertaking to perform the inspection whether or not inspections were a promised inducement for the contract.
One of the leading cases in the country is Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co. (7th Cir. 1912), 201 Fed. 617. This case arose in the state of Wisconsin in a dispute between the Pabst Brewing Company and its boiler insurer. In that case the insurer's inspection arose ab extra the contract. The court stated:
"Inspection of the boilers necessarily requires care and skill in its performance for safety in their use, and, when thus undertaken by the Insurance Company to serve as a benefit to the assured, the duty arises, with or without contract obligation to inspect, to exercise reasonable care and skill in each inspection so made, although *316 no such rule of duty obtains in favor of the assured where the inspections are attributable alone to the policy provision for the sole benefit of the insurer, which would leave no ground for a finding of fact that they were understood between the parties to be made and accepted as inspection service for direct benefit to the Brewing Company. But, if so made and accepted as beneficial service, we understand the above-mentioned rule to be applicable as well with or without contract obligation for the service; that it is such making of the inspections, and no obligation on the part of the Insurance Company to make them, upon which the duty of care arises." (P. 629)
We believe the above reasoning is applicable to the instant case. Menominee Enterprises, the employer, had a clear obligation to inspect the boilers and to make sure that they were safe. While it is no doubt true that the inspection was made in part for the benefit of the insurance company, there is evidence which if believed on trial would lead to the conclusion that the inspection service was accepted for the direct benefit of Menominee Enterprises.
In Van Winkle v. American Steam Boiler Co. (1890), 52 N. J. L. 240, 19 Atl. 472, the court upheld liability where the insurer had reserved in its policy the right to inspect and examine each boiler. The court there stated that the insurer would not be liable had it made no inspection at all, but that the insurer had gratuitously made inspections and furnished its insured with certificates of inspection. The court said:
"And it would seem that there is a broader ground than the one above defined on which the present case can be based. It is this, that in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, ipso facto, imposes as a public duty the obligation to exercise such care and skill." (P. 247)
*317 The above-cited cases represent almost the uniform holdings of courts throughout the country. Defendant, however, cites Zamecki v. Hartford Accident & Indemnity Co. (1953), 202 Md. 54, 95 Atl. 2d 302, a case in which an insurer had gratuitously undertaken an inspection of a grandstand at a Sonja Henie ice show. The Maryland court held that, since this was a voluntary inspection, there was no liability. The Illinois court in Nelson, supra, commenting on Zamecki, stated:
"The Maryland court, in what would appear to be a distinct minority view, was of the opinion that no duty could arise from voluntary inspection, as distinguished from voluntary maintenance." (P. 79)
Other cases relied upon by the defendant (Viducich v. Greater New York Mut. Ins. Co. (1963), 80 N. J. Super. 15, 192 Atl. 2d 596, and Ulwelling v. Crown Coach Corp. (1962), 206 Cal. App. 2d 96, 23 Cal. Rptr. 631) are clearly distinguishable. It should be pointed out that in Viducich, the case involved a failure to conduct any inspection and the only inspection conducted was done at the very time of the application for insurance. In Ulwelling, also, the inspection was conducted initially to determine whether the bus company should be insured at all. Subsequent inspections were made on a sampling basis only and did not purport to make an extensive inspection. In fact, the bus involved in Ulwelling had not been inspected. Even Ulwelling, cited by the defendant, fails to go to the point at issue here. Ulwelling was a noninspection case. The California court in Ulwelling stated:
"Nor does the general law of negligence impose any duty on the part of respondents to inspect, as urged by appellants. Cases cited in their argument relate to affirmative acts performed in a negligent manner. The most appellants have ever claimed is that respondents *318 failed to make the kind and number of inspections they thought respondents should have made...." (P. 136)
It is apparent that Ulwelling is more reasonably construed to support the plaintiff's position in the instant case than that of the defendant.
We therefore conclude that the facts alleged in the plaintiff's complaint are sufficient to spell out a cause of action against an insurer who has negligently performed a gratuitously undertaken inspection.[2] It is obvious that when the defendant addressed its affidavit on summary judgment only to the point that it had no contractual obligation to inspect and therefore no liability, it bypassed the crucial thrust of the plaintiff's complaint. It asserted no facts from which a court could properly conclude that the plaintiff's cause of action for negligence had no merit. Ordinarily, in considering a defendant's motion for summary judgment we would not undertake to determine whether or not the plaintiff's complaint stated a cause of action, but in the instant case, where the defendant predicated its motion upon an erroneous concept of the law and disregarded the plaintiff's principal allegations of negligence, such discussion *319 is necessary. While we have alluded to allegations of the complaint, we of course do not accept them as verities. The negligence itself is denied in the answer. The issues of fact must be resolved by trial and have not been disposed of by defendant's motion for summary judgment.
By the Court.Judgment reversed.
HALLOWS, C. J. (dissenting).
The majority opinion is either ambiguous in explaining the law or it misapplies well-established principles involving inspections of hazards by insurance companies. The law is well stated in Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co. (7th Cir. 1912), 201 Fed. 617, quoted by the majority. The rule is clear that when the inspection of boilers is undertaken by an insurance company to serve as a benefit to the assured, the duty arises to exercise reasonable care and skill in each inspection. But the court points out the other half of the rule that no such rule of duty obtains in favor of an insured where the inspections are attributable alone to the policy for the sole benefit of the insurer. And in such a case the policy provision provides no ground for a finding of fact that the inspections were understood by the insurance company and its insured to be made and accepted as an inspection service for the direct benefit of the insured. A similar rule is stated in Restatement, 2 Torts 2d, p. 142, sec. 324 A, but it is to be noted that this section states, "One who undertakes, gratuitously or for consideration, to render services to another, etc."
The language in the majority opinion, "It is enough that it undertook to inspect the boilers and that it did so negligently," must be read with the language in the Restatement so that the insurance company undertook to render such inspection service to its insured. Likewise, the language of the majority opinion in referring to Wulf v. Rebbun (1964), 25 Wis. 2d 499, 131 N. W. 2d 303, that this court made it clear "that liability may be *320 imposed on one who, having no duty to act, gratuitously undertakes to act and does so negligently" must be understood not to enlarge but to rephrase the quotation from that case that the act was "to do something to another." In Wulf we stated expressly that the pleadings alleged an assumed duty owing to the plaintiff which was breached; Firkus v. Rombalski (1964), 25 Wis. 2d 352, 130 N. W. 2d 835, was cited. In Firkus the town of Hull was not required to put stop signs on a roadway but it undertook to control traffic at an intersection by placing a stop sign for the benefit of the public and on which the public had a right to rely. Consequently, the negligence in maintaining this stop sign was attributable to the town. None of these cases holds the proposition so broadly stated in the majority opinion.
In this case the insurance company has liability for negligently inspecting boilers if it can be proved that such inspection was negligent and that the insurance company undertook the duty of inspection for the benefit of the assured as well as for itself. If a contractual basis cannot be found for the duty, then to recover in tort there must be a right to rely on the inspections. The insurance company claims the inspections were for its sole benefit to cut down its possibility of loss and its liability on the policy. The insurance company's reports are made to the insured so that the insured will correct conditions which create hazards. If the reports are not followed, it is common knowledge that the insurer will cancel the policy. It is argued by the respondent the inspections are attributable only to the policy provisions for the sole benefit of the insurer. There is no agreement on the part of the insurer to make such inspections or to give a certificate of inspection or even a report if the insurer finds nothing wrong with the insured's property.
It is true there is some evidence the insured and the industrial commission relied on reports which were made. *321 But, the important point is that they had no right to rely on such reports since they were not made to serve the benefits of either the industrial commission or of the insured. Merely making an inspection for one's own benefit even if negligently made is not a basis for liability to those who have no right to rely upon the inspections. Without a showing of a contract, express or implied, of an assumption of a duty or the right to rely on the conduct of the insurance company, the defense was sufficient on a motion for summary judgment and the trial court was correct in dismissing the complaint.
I am authorized to state Mr. Justice ROBERT W. HANSEN joins in this dissent.
NOTES
[1] The original language in 39 Ill. App. 2d at 122 reads as follows: "only with nonfeasance, or failure to detect and report a risk, or dangerous condition, already existing."
[2] We note sec. 895.44, Stats. (Laws of 1965, ch. 375, effective date November 23, 1965) purports to eliminate a cause of action such as asserted herein. The statute does not apply to the accident of May 15, 1965, nor does it purport to limit the general application of sec. 324 A, Restatement, supra. Sec. 895.44 provides:

"895.44 Exemption from civil liability for furnishing safety inspection or advisory services. The furnishing of, or failure to furnish, safety inspection or advisory services intended to reduce the likelihood of injury, death or loss shall not subject the insurer, its agent or employe undertaking to perform such services as an incident to insurance, to liability for damages from injury, death or loss occurring as a result of any act or omission in the course of such services. This section shall not apply if the active negligence of the insurer, its agent or employe created the condition which was the proximate cause of injury, death or loss, nor shall it apply to such services when required to be performed under the provisions of a written service contract."