Julie MAYNARD, Plaintiff-Respondent,

v.

CITY OF MADISON, David Couper, James Scrivner and American Home Assurance Company, Defendants-Appellants.†

Court of Appeals

*No. 80–210.  Argued December 5, 1980.—Decided February 24, 1981.*
(Also reported in 304 N.W.2d 163.)

† Petition to review denied.

274

For the defendants-appellants there was a brief by *Schlothauer, Johnson, Mohs, McDonald & Widder* of Madison, and *Henry A. Gempeler,* city attorney, and *Robert E. Olsen,* assistant city attorney, and oral argument by *Robert E. Olsen,* assistant city attorney.

For the plaintiff-respondent there was a brief by *Carroll Metzner* and *Bell, Metzner & Gierhart, S.C.* of Madison, and oral argument by *Carroll Metzner.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   Defendants appeal from a judgment on a special verdict which found the City of Madison, Police Chief Couper and Police Captain Scrivner negligent as to maintaining the confidentiality of plaintiff's identity as a paid police informer, and awarded plaintiff $21,800 damages. We affirm the judgment as to the city and reverse the judgment as to defendants Couper and Scrivner.

The facts are largely undisputed. Plaintiff became a paid informer for the Madison Police Department in 1971 at the request of a city police officer who assured her that her identity would be kept confidential. A similar commitment was made to her by a city police inspector. Plaintiff filed written reports with the department on the activities of local radical groups until she became an FBI informer in 1972. One such report is the subject of this lawsuit.

The department decided in 1975, upon direction of the common council, to make public an edited version of intelligence reports which the department had gathered from various sources. Plaintiff's reports and the reports of other informers were included in the 9,000 pages. Couper and the city attorney developed editing criteria

to be used by a team led by Scrivner in determining which reports should be made public. The team was not, among other things, to disclose the identity of police informers.[1]

Plaintiff expressed concern to the officer who recruited her that her identity would be protected when reports were released. The officer assured plaintiff that she would be protected and said that Scrivner had told him that the department would not make public the information she had provided. Scrivner testified that he assured the recruiting officer that plaintiff's identity would be protected.

The department released about one hundred documents to a John Mattes at his request, including a report written by plaintiff which does not bear her name but states in part:

---

[1] The criteria directed the editing team to take into consideration the following "public policies favoring the privilege of nondisclosure:"

A. Avoid releasing pretrial publicity that may tend to diminish the accused's right to a fair trial.

B. Retain information relating to police investigation and crime prevention techniques.

C. Consider adverse effect once litigation has been commenced.

D. Consider the possible harm to the public good that may result from the release of information that may hamper continuing investigations.

E. Identity of informants, complainants, witnesses, and victims. (Also, S.S. 905.10, where public disclosure may unduly damage reputation or bring about possible harm, scorn, harassment, embarrassment or notoriety.)

F. Avoid releasing the identity of persons under suspicion. (Where public disclosure may unduly damage reputation or bring about possible harm, scorn, harassment, embarrassment or notoriety.)

G. Retain the confidentiality of personnel records.

H. Consider other appropriate non-listed reasons for "special consideration."

I. Identity of police personnel (S.S. 905.09) (where public disclosure may unduly damage reputation or bring about possible harm, scorn, harassment, embarrassment or notoriety).

Thursday March 2-72

[Deleted] and I took a bus to Chicago and stayed with the [deleted] people. We got up early and went down to Continental Driveaway Co. and made arrangements for cars both ways to [deleted] and back. We went to the bus station and picked up John Mattes who came down on the bus that morning.

Friday March 3

After picking John up we went and picked up the car which turned out to be a used squad car that was being sent to [deleted] for resale.

The report describes the trip by the author, Mattes and the unidentified person to the "Stonybrook" conference, other persons and events at the conference and the trip back to Madison.

Mattes and three others confronted plaintiff and demanded that she confess that she had written the report. She was exposed by a local newspaper as an informer, and became the object of harassment, almost to the time of trial.

The jury found that the city, by its agents and employees, was negligent as to maintaining the confidentiality of the plaintiff's identity as a paid informer and that her damages were $21,800. Separate questions were not asked as to Couper and Scrivner. The form of the question is not an issue on this appeal. Judgment was entered on the verdict in favor of the plaintiff against the defendants jointly and severally in the amount of $21,800.

Defendants raise the following issues:

1. Did plaintiff have a recognized right in maintaining her anonymity?

2. Are defendants immune from liability to plaintiff?

3. Is it contrary to public policy to hold the defendants liable to plaintiff?

### 1. *Duty To Protect Confidentiality Of Plaintiff's Identity*

Plaintiff's amended complaint alleges that the city assumed the duty to protect her identity as an informer and that she would not have acted as an informer had the city not done so. She alleges that defendants Couper and Scrivner, acting within their power as employees of the city, negligently failed to withhold information which identified plaintiff as an informer.

Defendants moved to dismiss the amended complaint for failure to state a claim. The trial court correctly denied the motion on grounds that one may assume a duty to another where, under the ordinary circumstances, such a duty would not exist, citing *Wulf v. Rebbun,* 25 Wis.2d 499, 131 N.W.2d 303 (1964), and *Bush v. Mahlkuch,* 272 Wis. 246, 75 N.W.2d 283 (1956). *See also American M. L. Ins. Co. v. St. P. F. & M. Ins. Co,* 48 Wis.2d 305, 313, 179 N.W.2d 864, 868 (1970), which adopts *Restatement (Second) of Torts* sec. 324A at 142 (1965),[2] and *Coffey v. Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976). A person who voluntarily undertakes a duty to perform an act, must exercise reasonable care in performing it. *Coffey,* 74 Wis.2d at 540, 247 N.W.2d at 139.

Defendants do not claim that the evidence is insufficient to sustain a finding that they assumed the duty to protect the confidentiality of plaintiff's identity. Instead, they argue that no duty to protect an informant's identity arises from the "informer's privilege," outlined by *Stelloh v. Liban,* 21 Wis.2d 119, 124 N.W.2d 101

---

[2] Section 324A makes a person who assumes a duty liable "for physical harm resulting from his failure to exercise reasonable care" if various conditions are met. The jury awarded plaintiff damages only for lost earnings and loss of earning capacity. The question whether the damages awarded are within the rule has not been argued.

(1963), or from Wisconsin's right of privacy statute, sec. 895.50, Stats., or from sec. 19.21, Stats., which pertains to the custody and delivery of official property and records.

We do not pass on defendants' arguments addressed to those issues because they are not pertinent to the theory of the complaint. Plaintiff proceeded on a theory founded on the laws of this state: that defendants breached a duty, which the city had assumed, to protect her anonymity.

### 2. *Immunity Of Officers*

The general rule is that a public employee who acts within the scope of his official authority and in the line of his official duties is immune from personal liability. *Cords v. Anderson,* 80 Wis.2d 525, 539, 259 N.W.2d 672, 679 (1977); *Lister v. Board of Regents,* 72 Wis.2d 282, 300, 240 N.W.2d 610, 621 (1976); *Yotvat v. Roth,* 95 Wis.2d 357, 365, 290 N.W.2d 524, 529 (Ct. App. 1980).

There are limited exceptions to the general rule, the most frequently cited of which is that a public employee is liable for damages resulting from the negligent performance of a ministerial duty. *Cords,* 80 Wis.2d at 541, 259 N.W.2d at 679; *Lister,* 72 Wis.2d at 300–01, 240 N.W.2d at 621–22; *Yotvat,* 95 Wis.2d at 366, 290 N.W.2d at 530.

The trial court noted on motions after verdict that a public officer may be liable for negligence in the exercise of a ministerial function but correctly concluded that the editing team performed discretionary acts. *Lister,* 72 Wis.2d at 300–01, 240 N.W.2d at 622, defines a ministerial duty as follows:

A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the

performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

The decision whether to delete from or to withhold or release a report on the basis of the criteria set forth in n. 1 left much to the judgment or discretion of the person making the decision. The duty to protect plaintiff's identity from disclosure was therefore nonministerial. Negligent performance of that duty consequently did not deprive Couper and Scrivner of their immunity.

The trial court also noted that a public officer is also liable if he exercises a discretionary act wholly outside his authority. When a public officer acts in the clear absence of all jurisdiction or authority, he enjoys no immunity. *Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 692, 292 N.W.2d 816, 830 (1980) ; *Pavlik v. Kinsey*, 81 Wis.2d 42, 50, 259 N.W.2d 709, 712 (1977) ; *Lowe v. Conroy*, 120 Wis. 151, 97 N.W. 942 (1904). The court concluded that because the material pertaining to John Mattes released by the city could, on its face, have no effect other than to compromise plaintiff's identity as an informer, its release was an act wholly outside the authority of Couper and Scrivner.

The authority of Couper is not of record. The resolution or other direction by the common council is not in evidence and there is no testimony that Couper was directed by the common council to exercise discretion in releasing the documents. Scrivner's authority derives from Couper's instructions. Couper's memorandum in which he appointed the editing team states that the team "will be examining the contents of the files through a process of applying certain statutory and policy tests to the material to determine whether or not

it can be made available for public inspection." That memorandum defined the authority of the team members.

*Scarpaci,* 96 Wis.2d at 692, 292 N.W.2d at 830, states:

This court, like other courts, has made a distinction between those acts which are outside the officer's jurisdiction or authority and those acts which constitute negligence or a mistake of judgment within the officer's lawful jurisdiction.

*Scarpaci* quotes at length, with apparent approval, from *Gildea v. Ellershaw,* 363 Mass. 800, 298 N.E.2d 847, 858 (1973), for the rule as to the tort liability of nonjudicial officers. 96 Wis.2d at 693 n. 23, 292 N.W.2d at 830. According to *Gildea,* if a nonjudicial public officer is authorized or required in the exercise of his judgment and discretion to make a decision and to perform acts in the making of that decision and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision.

The editing team was authorized to decide whether to release the report at issue to Mattes. Its members are immune from liability for negligence in making that decision under the rule stated in *Gildea, supra.*

The trial court may have considered that the release of the report identifying Mattes differed in quality from ordinary negligence. The jury, however, was asked to determine whether the city was negligent and was instructed that a person is negligent when he fails to exercise ordinary care. The court found that the evidence supported the jury's findings and denied the defendant's motions to change the answers.

Because a public officer is immune from liability for negligence or mistake of judgment within the officer's

authority, *Scarpaci*, 96 Wis.2d at 692, 292 N.W.2d at 830, we conclude that failure by a public officer to exercise ordinary care in the performance of a discretionary act does not, as a general rule, put the act beyond the scope of the officer's authority.

Under the facts of this case, defendants Couper and Scrivner are immune from personal liability to plaintiff. The judgment against those defendants must be reversed.

### 3. *Immunity Of City*

The city claims immunity because sec. 895.43(4), Stats. 1977, bars suits "against [a political] corporation . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."[3]

According to *Lifer v. Raymond*, 80 Wis.2d 503, 511–12, 259 N.W.2d 537, 541 (1977), a quasi-legislative act under sec. 895.43(4), Stats. 1977, involves the exercise of discretion or judgment in determining the policy to be carried out or the rule to be followed. A quasi-judicial act under the same statute involves the exercise of discretion and judgment in the application of a rule to specific facts. A quasi-judicial act involves essentially judicial procedures such as notice, hearing, exercise of discretion and a decision on the record. *Scarpaci*, 96 Wis. 2d at 683, 292 N.W.2d at 826, citing *Coffey*, 74 Wis.2d at 533–34, 247 N.W.2d at 136.

The suit is not brought against the city because of the policy decision by the common council to release intelligence reports or the decision to establish release

---

[3] Section 895.43, Stats. 1977, has been renumbered as sec. 893.-80, Stats. 1979.

criteria. The acts by city employees in applying the policy did not determine the nature of the policy. The acts by which the employees carried out the policy were not judicial or quasi-judicial because they did not involve the procedures described in *Scarpaci, supra.* Accordingly, we conclude that the city enjoys no immunity by virtue of sec. 895.43(4), Stats. 1977, from liability to plaintiff.

The city asserts, with no citation of authority, that it is free from liability under the doctrine of *respondeat superior* because its employees, Couper and Scrivner, are immune from liability.

An agent's immunity from tort liability does not flow to the agent's principal. *Hallmark Ins. Co. v. Crary Enterprises, Inc.,* 72 Wis.2d 472, 475, 241 N.W.2d 171, 173 (1976), adopts as "the correct rule of law" *Restatement (Second) of Agency* sec. 217 at 468–69 (1958), which states in relevant part:

In an action against a principal based on the conduct of a servant in the course of employment:

. . . .
(b) The principal has no defense because of the fact that:

. . . .
(ii) The agent had an immunity from civil liability as to the act.

The rule applies to municipalities claiming the benefit of the immunity of a municipal employee. *See, e.g., Eddy v. City of Los Angeles,* 28 Cal. App.2d 89, 82 P.2d 25 (1938); *Wicks v. Milzoco Builders, Inc.,* 481 Pa. 554, 393 A.2d 300, 301 n. 2 (1978) (relying partly on *Restatement (Second) of Agency* sec. 217); and *Poynter v. County of Otter Tail,* 223 Minn. 121, 25 N.W.2d 708, 712 (1947) (applying *Restatement of Agency* sec. 217 [1933]).

### 4. *City's Liability Not Contrary To Public Policy*

Informers are rarely rewarded with honor, whatever other compensation they receive. The duty of citizens to aid law enforcement nevertheless gives rise to a policy which favors protection of an informer's anonymity. The policy is strong enough to create a qualified governmental privilege against disclosure of an informer's name. *Stelloh*, 21 Wis.2d at 125, 124 N.W.2d at 104. It would be incongruous to excuse the city from liability to plaintiff on grounds of public policy, especially where the city assumed the duty to protect her. It ill-becomes the city to argue that its own past policy was so obnoxious as to cause the courts to save the city from the consequences.

The harassment suffered by plaintiff and her damages are not disproportionate to the culpability of the city in view of the potential danger an informer faces. There is no evidence that the award to plaintiff places an unreasonable burden upon the city. *Compare Stewart v. Wulf*, 85 Wis.2d 461, 479, 271 N.W.2d 79, 88 (1978), which lists the traditional judicial reasons for voiding liability for negligence on grounds of public policy, none of which justify that action here.

*By the Court.*—Judgment is affirmed as to the City of Madison and reversed as to defendants Couper and Scrivner. No costs to any party.