Michael S. STANN, individually and as personal representative of the Estate of Jennifer L. Stann, and Claire D. Stann, Plaintiffs-Appellants,

v.

WAUKESHA COUNTY, Defendant-Respondent.

Court of Appeals

*No. 89-2296. Submitted on briefs January 31, 1991.—Decided March 27, 1991.*

(Also reported in 468 N.W.2d 775.)

810

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Howard B. Schoenfeld,* and *Jeffrey M. Leggett* of *Fiorenza & Hayes, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Steve Schmitz,* assistant corporation counsel of Waukesha.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   Michael and Claire Stann (the Stanns) appeal from a summary judgment dismissing their action against Waukesha county for the alleged wrongful drowning death of their young daughter, Jennifer. The trial court concluded that the Stanns' action was barred by principles of recreational immunity pursuant to sec. 895.52, Stats., and governmental immunity pursuant to sec. 893.80, Stats. The Stanns challenge both of these conclusions in this appeal. We affirm the trial court's judgment in all respects.

The essential and undisputed facts are as follows. On July 10, 1987, Claire Stann (Claire) took the couple's three-year-old daughter Jennifer to Menomonee Park beach. Menomonee Park is owned and operated by Waukesha county. Early that afternoon, Claire and Jennifer waded together in the area of the beach which is reserved for children. At one point, Claire left the water momentarily, only to notice that Jennifer was no longer with her. Claire looked around and, failing to see Jennifer, approached the lifeguard assigned to the children's area. Claire described Jennifer to the lifeguard and said that she was missing. The lifeguard told Claire to look both on the beach and in the beach house. Claire did as the lifeguard suggested, enlisting other parents at the beach to help.

After this initial search for Jennifer proved fruitless, Claire again approached the lifeguard station. She found a different lifeguard on duty. Claire explained the situation to the new lifeguard, adding that she and others had searched everywhere the first lifeguard had suggested to no avail. Claire then asked the second lifeguard to call bathers out of the water and to search the water for Jennifer. The lifeguard told Claire to search the beach and beach house again. Again, Claire searched and failed to find Jennifer.

Claire returned to the lifeguard station a third time. This time, Claire persuaded the lifeguard to call a search for Jennifer. Claire searched in the water for a while, until the lifeguard told her to check the parking lot. The water was cleared; volunteers formed a "human chain" and walked through the swimming area in an effort to locate anything below the surface. The volunteers found Jennifer submerged in the children's area of the beach. Jennifer was taken to a hospital where she died the following day. In her affidavit, Claire estimated that

twenty to twenty-five minutes had elapsed from the time she first reported Jennifer missing until Jennifer was found.

The Stanns brought this action for wrongful death against Waukesha county. In their complaint, the Stanns alleged the county had been negligent in three respects: (1) the county had failed to establish and implement appropriate policies for locating missing children in the swimming area; (2) the county's lifeguards failed to take appropriate action upon hearing that Jennifer was missing; and (3) the county had improperly barred the use of life jackets in the children's swimming area of the beach.

The county moved to dismiss the Stanns' claims on the grounds that they were barred by principles of immunity. More particularly, the county contended that the first and third of the Stanns' theories of liability—the missing person policy and life jacket policy—were barred by sec. 893.80(4), Stats., which grants immunity from tort liability to governmental bodies for the "discretionary" acts of their employees, officers and agents. *See* sec. 893.80(4) and *Pavlik v. Kinsey,* 81 Wis. 2d 42, 49–50, 259 N.W.2d 709, 711–12 (1977). The county further maintained that all three of the Stanns' theories of liability—including the second claim based upon the actions of the lifeguards on the day of the tragedy—were barred by sec. 895.52, Stats., which immunizes landowners from liability arising from injuries sustained by recreational users of their land.

Because the parties submitted matters outside the pleadings, the trial court treated the county's motion to dismiss as a motion for summary judgment. *See* sec. 802.06(2), Stats. The trial court ruled that governmental immunity barred the Stanns' first and third theories and that recreational use immunity barred the Stanns'

"entire complaint." The Stanns appeal, offering numerous arguments why governmental and recreational use immunity should not apply to their claims.

Here, on appeal, the Stanns confine their challenge to the applicability of recreational use immunity to their second theory—that the lifeguards did not respond appropriately to Claire's report that Jennifer was missing. As to their first and third claims, the Stanns argue that the trial court improperly applied governmental immunity law.

The county responds in kind to the Stanns' arguments. Thus, the parties structure this appeal as one involving principles of governmental immunity as to the Stanns' first and third claims and one involving recreational immunity as to the Stanns' second claim.[1]

When called upon to review a trial court's grant of a motion for summary judgment, we follow the same methodology as the trial court. *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.,* 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Summary judgment methodology is set forth in sec. 802.08(2), Stats. We review a summary judgment determination *de novo,* independent of the trial court's decision. *Wilson v. Waukesha County,* 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct.

[1]The county does make a general assertion in its appellate brief that the recreational use immunity statute bars all of the Stanns' claims. This argument, however, is not further developed in terms of the Stanns' first and third claims. We need not address an appellate issue raised but inadequately briefed. *See In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 (Ct. App. 1985). Nor is it essential that we address this argument since we otherwise affirm the dismissal of the Stanns' first and third claims on the alternative grounds of governmental immunity.

App. 1990). We examine the record to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Keefer v. State Farm Fire & Casualty Co.,* 127 Wis. 2d 41, 44, 377 N.W.2d 632, 633 (Ct. App. 1985). We owe no deference to the trial court's resolution of issues of law. *Id.*

This case also presents questions of law on another basis. The Stanns' arguments travel to the trial court's application of the immunity statutes to the facts of this case. Such an exercise also presents a question of law. *Id.*

We address each immunity theory in turn.[2]

---

[2]On a threshold basis, Waukesha county argues that the trial court was obliged to enter summary judgment in its favor on the first of the Stanns' theories of liability—that the county had "no missing person procedure." In support, the county points to its affidavit that established such a policy and the Stanns' statement in their appellate brief "that Waukesha County had and implemented policies and procedures for locating missing persons." Thus, the county argues there was no "genuine issue for trial" within the meaning of sec. 802.08(3), Stats.

The county misconstrues the Stanns' argument. Viewed *in toto,* the Stanns' argument is not that the county had *no* missing person procedures. Rather, the Stanns' complaint states that the county failed to "establish and implement *appropriate* policies and procedures to locate missing persons in the swimming area." (Emphasis added.) Thus, evidence offered by the county to the effect that it had a "missing person flow chart" which lifeguards were trained to follow, serves not to negate the Stanns' claim, but rather to provide the foundation for the Stanns' claim that the county's procedures were "inadquate [sic] for the purpose of locating missing persons on the beach, and that this was the proximate cause of the drowning of Jennifer Stann." Accordingly, we reject the county's argument that it was entitled to judgment as a mat-

815

The trial court ruled that the Stanns' first and third claims—the missing person policy and the life jacket policy, respectively—were barred by the governmental immunity provided pursuant to sec. 893.80(4), Stats. The Stanns argue that the trial court did not apply the correct standard when it determined that the actions of park officials concerning the design and implementation of missing person procedures and life jacket policy were immunized under the statute. We disagree.

Section 893.80(4), Stats., provides in relevant part that:

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

The most generally recognized exception to this rule is that officials are liable for damages flowing from the negligent performance of a purely ministerial duty. *Lister v. Board of Regents,* 72 Wis. 2d 282, 300–01, 240 N.W.2d 610, 621–22 (1976). A ministerial duty is one which is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion. *Domino v. Walworth*

---

ter of law pursuant to sec. 802.08(3), Stats., concerning the Stanns' first theory of liability.

*County,* 118 Wis. 2d 488, 490, 347 N.W.2d 917, 919 (Ct. App. 1984), *quoting Lister,* 72 Wis. 2d at 301, 240 N.W.2d at 622. From this, it follows that acts which involve the exercise of judgment or discretion rather than the mere performance of a prescribed task do not come within the exception to the rule. *Lifer v. Raymond,* 80 Wis. 2d 503, 509, 259 N.W.2d 537, 540 (1977). The terms "quasi-legislative" and "quasi-judicial" are synonymous with "discretionary." *Kimpton v. School Dist. of New Lisbon,* 138 Wis. 2d 226, 235, 405 N.W.2d 740, 744 (Ct. App. 1987).

The Stanns' argument focuses on the actions of a single Waukesha county employee: the park planning specialist. The Waukesha County Park Commission sets policy goals for the county's park system; the park planning specialist crafts the "specifics" which implement the commission's goals. The missing person procedures and the life jacket policy at Menomonee Park beach are examples of goals implemented by the park planning specialist. The Stanns do not contend that the park planning specialist's actions were not discretionary. Rather, the Stanns argue that the trial court "erroneously equated the term 'discretionary' with the terms 'quasi-legislative' and 'quasi-judicial.' " More particularly, the Stanns allege that courts have carved out an "exception to the exception," wherein certain acts may be deemed discretionary, but still not quasi-legislative or quasi-judicial, and therefore not subject to immunity.

Specifically, the Stanns argue that, for example, the implementation of the "lost child flow chart" by the park planning specialist cannot be considered quasi-legislative or quasi-judicial because while involving discretion, it did not involve *governmental discretion,* in that

817

it did not encompass-the-setting-of-policy-or-the-rank-ing-of-priorities. We disagree on two grounds.

First, the authorities upon which the Stanns rely for their "discretion but still not governmental discretion" argument are not applicable to the case at bar. Only three Wisconsin decisions have recognized such a distinction.[3] However, each of these cases involved allegations of negligence regarding medical decisions. These cases are restricted to their facts, as no Wisconsin decision applies this exception in any other setting.

Apparently recognizing the inapplicability of the medical decision cases, the Stanns turn to *Maynard v. City of Madison*, 101 Wis. 2d 273, 304 N.W.2d 163 (Ct. App. 1981), for assistance. *Maynard* does indeed hold that a city is not immune from suit in cases where its employees are negligent in the commission of discretionary acts effectuating city policies. *See id.* at 282–83, 304 N.W.2d at 168–69. The court of appeals, however, later retreated: "[t]o the extent our language in *Maynard* suggests a contrary or different rule [contrary to the rule that "quasi-legislative/quasi-judicial" is synonymous with "discretionary"] we withdraw it." *See Kimpton*, 138 Wis. 2d at 234 n.4, 405 N.W.2d at 744. This aspect of *Maynard* is no longer the law.

Second, the actions of the park planning specialist are clearly discretionary in nature. The park planning specialist was developing a plan, rather than obeying the directives of a plan already in place. *See, e.g., Allstate Ins. Co. v. Metropolitan Sewerage Comm'n,* 80 Wis. 2d 10, 16–17, 258 N.W.2d 148, 150–51 (1977). Such acts are

---

[3]*Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 292 N.W.2d 816 (1980); *Protic v. Castle Co.,* 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986); *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985).

quintessentially discretionary and confer immunity under sec. 893.80(4), Stats.

## RECREATIONAL USE IMMUNITY

We turn next to the Stanns' argument that recreational use immunity, sec. 895.52, Stats., is not applicable to their second claim—that the lifeguards failed to take appropriate action upon learning that Jennifer was missing.

Section 895.52, Stats., provides that landowners generally are immune from liability for injuries sustained by recreational uses of their land. In particular, sec. 895.52(2) declares:

(a)   Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
1.   A duty to keep the property safe for recreational activities.
2.   A duty to inspect the property . . ..
3.   A duty to give warning of an unsafe condition, use or activity on the property.

A county qualifies as an owner entitled to the statute's immunity. *See* sec. 895.52(4), 895.52(1)(a)3 and 895.52(1)(d)1. The statute also sets out circumstances in which the immunity does not apply. *See* sec. 895.52(3)-(6).

The Stanns do not attempt to bring themselves under any of these express exceptions. Instead, the Stanns argue that Waukesha county does not enjoy the statute's immunity for three reasons: (1) under *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989), Jennifer did not enter Menomonee Park beach for the purpose of engaging in a recreational activity within the

meaning of the statute; (2) recreational use immunity does not extend to property which has been developed beyond its natural state; and (3) the county had, by training and placing lifeguards on duty, gratuitously assumed a responsibility not immunized under the statute. We address each contention in turn.

## Shannon v. Shannon

Section 895.52(1)(g), Stats., defines a "recreational activity" as:

> any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure . . . includ[ing], but . . . not limited to . . . water sports . . ..

By wading in the water with her mother, Jennifer's actions appear to fall within the plain language of the statute. The Stanns, however, base their argument on the supreme court's holding in *Shannon* that "the random wanderings of a three-year-old child are not substantially similar to the activities enumerated in sec. 895.52(1)(g)," and that the statute did not, therefore, confer immunity for the child's injuries. *Shannon,* 150 Wis. 2d at 448, 442 N.W.2d at 32.

In *Shannon,* Christen Shannon sustained serious personal injuries when she nearly drowned in a lake abutting her parents' home. At the time shortly before Christen's accident, her parents were observing Christen at play in the family's yard. The Shannons' next-door neighbors, the Schultzes, were at the same time entertaining guests in their yard which abutted both the Shannons' yard and the lake. When Christen went onto the Schultzes' yard, her father called for her to come home. Mrs. Schultz called back "[i]t's okay, she's not hurting anything, she'll be all right." *Id.* at 438, 442 N.W.2d at 28. After a few minutes had passed, Mr.

Shannon observed that he could no longer see Christen. After several minutes of searching, Christen was found floating in the water near the Schultzes' pier. *Id.* at 438–39, 442 N.W.2d at 27–28. The trial court dismissed Christen's action against the Schultzes on the basis of recreational immunity; the court of appeals reversed.

The supreme court reversed the court of appeals, concluding that recreational use immunity under sec. 895.52, Stats., was not available to the Schultzes because the statute "only applies to cases of landowner or possessor negligence when a party *enters onto the owner's or possessor's land to engage in a 'recreational activity.'* " *Id.* at 448, 442 N.W.2d at 32 (emphasis added). As noted above, the court stated that "the random wanderings of a three-year-old" lacks sufficient resemblance to activities described by the statute as recreational. *Id.*

The Stanns argue that Jennifer's actions on the day of the accident were the equivalent of the "random wanderings" of Christen Shannon. The Stanns argue that "[a] three year old child does not engage in activity for the purpose of exercise, relaxation, pleasure or for any ascertainable purpose at all." They further contend that "[i]t is simply in the nature of a three year old to engage in random, frivolous activities which have no ascertainable purpose." In effect, the Stanns argue that a child of tender years is incapable of engaging in a recreational activity within the meaning of sec. 895.52, Stats., and that property owners cannot as a result claim immunity for the injuries such a child may sustain.

■
We conclude that the Stanns read too much into *Shannon.* First, the supreme court did not say that a three-year-old is inherently *incapable* of engaging in recreation within the meaning of the statute. Nor did the court state that all activity undertaken by a three-year-

old child may be characterized as "random" and hence lacking the requisite purposefulness under the statute. Rather, the court stated that "*the random wanderings* of a three-year-old" do not confer immunity. *Shannon,* 150 Wis. 2d at 448, 442 N.W.2d at 33 (emphasis added). From this we conclude that the converse—the purposeful or consciously recreational activity of a three-year-old-child—triggers the statutory protections.

The facts of *Shannon* do not indicate that Christen exhibited any particular recreational motive for entering the Schultzes' property or the lake waters. Thus, the *Shannon* decision properly holds what the facts dictated—absent evidence of purposeful or conscious recreational intent, a child's accidental wanderings into harm's way does not trigger the statute's immunity.

Moreover, the facts of *Shannon* do not reveal any recreational intent of Christen's parents that could have been attributed to the child. Herein lies a critical factual distinction between the case at bar and *Shannon.* In an effort to qualify this case under the *Shannon* rule, the Stanns liken the actions of Jennifer's mother in this case to those of Christen's parents in *Shannon.* For instance, the Stanns argue, "[a]s Claire Stann intended July 10, 1987 as a day of recreation for herself and her daughter, the Shannons undoubtedly had the same purpose in bringing Christen to the lakeshore."

However, the facts of *Shannon* do not support the Stanns' argument that Christen's parents "undoubtedly" had a recreational purpose for Christen. No evidence even remotely suggested that Christen's parents intended Christen's wanderings to the neighboring property (or the decision to allow her to remain there) to be for the purpose of allowing Christen to, unsupervised, enjoy or use the lake waters.

This case is markedly different. The undisputed facts show that Claire Stann brought Jennifer to the Menomonee Park beach in order to use and enjoy the recreational aspects of the site.

This distinction is not inconsequential "hair-splitting" as the Stanns contend for it travels to the heart of the public policy underpinnings of the recreational immunity statute. 1983 Wis. Act 418, by which the recreational immunity statute was enacted, provides, in part, at sec. 1, "[t]he legislature intends by this act to limit the liability of property owners toward others *who use their property for recreational activities . . ..*" (Emphasis added.) Thus, it becomes necessary to inquire into the purpose of the property user (or those who supervise such a user) in order to decide whether the statute applies.

We conclude that this case is not controlled by *Shannon* and that the undisputed summary judgment evidence allows but one conclusion—Jennifer's presence at the Menomonee Park beach was for purposes of her engaging in recreational activity as contemplated pursuant to sec. 895.52, Stats.

## Improved or Developed Recreational Site

The Stanns next argue that sec. 895.52, Stats., does not apply to lands which are improved or developed beyond their natural state. The record reveals that Menomonee Park beach is not now, nor was it at the time of Jennifer's accident, an undeveloped tract of land. What is now Menomonee Park beach was, at the time of its acquisition by the county, an abandoned stone quarry which had become filled with water. Today, Menomonee Park beach has a sand beach, a beach house, a shallow swimming area and a parking lot.

In support of their contention, the Stanns rely principally upon *Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 317 N.W.2d 468 (1982). In *Quesenberry,* the supreme court refused to extend recreational immunity to the owners of a golf course upon which Tess Quesenberry fell and was injured. *See id.* at 696, 317 N.W.2d at 473. The appellate issue was whether golfing was a recreational activity within the meaning of sec. 29.68, Stats. (1977), the predecessor to sec. 895.52, Stats. Section 29.68 protected the owner of premises used by others for:

> hunting, fishing, trapping, camping, hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes . . ..

*See also Quesenberry,* 106 Wis. 2d at 691–92, 317 N.W.2d at 471.

Because golfing was not one of the activities enumerated in the statute, the supreme court applied the statutory construction canon *ejusdem generis* to determine whether golfing might be considered a "recreational purpose." The court ruled that "the common feature of the enumerated words is that they are the type of activity that one associates being done on land in its natural undeveloped state as contrasted to the more structured, landscaped and improved nature of a golf course . . .." *Id.* at 693, 317 N.W.2d at 472.

■

The Stanns argue *Quesenberry* controls the instant case. It cannot, however, because sec. 1 of 1983 Wis. Act 418, by which the present recreational immunity statute was enacted, expressly provides that "[t]he act is intended to overrule any previous Wisconsin supreme court decisions interpreting sec. 29.68 of the statutes if

the decision is more restrictive than or inconsistent with the provisions of this act." Section 895.52(1)(f), Stats., defines "property" as "real property *and buildings, structures and improvements thereon,* and the waters of the state . . .." (Emphasis added.) Thus, *Quesenberry* conflicts with sec. 895.52 and, pursuant to the legislature's directive, the statute, not *Quesenberry,* controls this case.

The Stanns persist, however, in attempting to make this a *Quesenberry* case, arguing that we must indulge in a strict construction of sec. 895.52, Stats., because the statute is in derogation of the common law. In support, the Stanns cite *LePoidevin v. Wilson,* 111 Wis. 2d 116, 129, 330 N.W.2d 555, 562 (1983). However, as with *Quesenberry, LePoidevin* is a pre-sec. 895.52 case and is governed by the legislature's directive that the new act overrules prior inconsistent or more restrictive cases.

■ Moreover, the legislature has not only directed that sec. 895.52, Stats., overrules prior inconsistent case law but also is to be "*liberally construed* in favor of property owners to protect them from liability." Section 1, 1983 Wis. Act 418 (emphasis added). The Stanns' argument for a strict construction is directly contrary to this legislative directive and intent. Thus, the improvements to Menomonee Park beach over the years do nothing to deprive the county of immunity under sec. 895.52.

### Assumption of Duty
*Ervin v. City of Kenosha*

■ For their third argument against the application of recreational use immunity, the Stanns allege that because sec. 895.52, Stats., on its face, abrogates only duties relating to the maintenance of property—*see* sec.

895.52(2)—the county has, by placing lifeguards on the beach, assumed an additional duty not immunized under the statute. Moreover, argue the Stanns, the lifeguards' alleged failure to take appropriate action when notified that Jennifer was missing constitutes a breach of the duty of care voluntarily assumed by the county.

The supreme court has recently rejected this same argument in *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 464 N.W.2d 654 (1991), a case strikingly similar to the case at bar.[4] In *Ervin,* two boys drowned at a city park beach after they encountered an unmarked eight-foot drop-off. The boys' parents alleged, *inter alia,* that the city lifeguards were negligent in performing their duties and that the city was negligent in its hiring and training of the lifeguards. The parents further argued that the lifeguards' actions constituted the shouldering of an additional duty to which immunity did not attach. Relying on the recreational immunity statute, the trial court granted summary judgment to the city of Kenosha.

On appeal, the parents in *Ervin* relied, as do the Stanns here, on *American Mutual Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 48 Wis. 2d 305, 313, 179 N.W.2d 864, 868 (1970), which provides that liability may attach to the "gratuitous" undertaking of duty. In *Ervin,* the supreme court held that *American Mutual* is inapplicable in cases where recreational use immunity is asserted as a defense. *See Ervin,* 159 Wis. 2d at 476–77, 464 N.W.2d at 659.

The supreme court's reasoning was twofold. First, the court noted that "[t]he legislature clearly expressed an intent to change conflicting common law when it enacted 1983 Wis. Act 418." *Id.* at 476, 464 N.W.2d at

---

[4]By a prior order, we placed this case on hold pending the release of the supreme court's decision in *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 464 N.W.2d 654 (1991).

659. Second, the *American Mutual* rule would have the effect of narrowing the scope of immunity for landowners, and thus run afoul of the legislature's express directive that sec. 895.52, Stats., be "liberally construed in favor of property owners to protect them from liability." *Id.* at 476–77, 464 N.W.2d at 659 *(quoting* sec. 1, 1983 Wis. Act 418). In so doing, the supreme court observed that "the legislature has not provided recourse for the victims' parents under the recreational use statute" because were liability to be "imposed on landowners for negligence in failing to provide *adequate* safety measures, it would encourage landowners to provide *no* safety measures . . .." *Id.* at 477, 464 N.W.2d at 659–60 (emphasis added). "Such a result would conflict with the intent of sec. 895.52." *Id.* at 477, 464 N.W.2d at 660.

The supreme court in *Ervin* recognized that there are sound countervailing public policy reasons against immunity in cases such as that presented here. Indeed, the Stanns direct our attention to one of the same arguments voiced by the parents in *Ervin,* namely the false sense of security conveyed to the public by the posting of lifeguards. But, observed the supreme court, "when a legislative mandate is 'clearly expressed and there is no warrant for alternative construction, a court may not impose its view of what the law should be.' " *Id.* at 478, 464 N.W.2d at 660 *(quoting Wirth v. Ehly,* 93 Wis. 2d 433, 448, 287 N.W.2d 140, 147 (1980)).

The trial court properly concluded that the Stanns' second claim was barred by the recreational immunity statute, sec. 895.52, Stats. We affirm the judgment dismissing the Stanns' complaint.

*By the Court.*—Judgment affirmed.